1  **DEREK SMITH LAW GROUP, PLLC**
   Matt E.O. Finkelberg, State Bar No. 329503
2  633 West 5th Street, Suite 3250
   Los Angeles, CA 90071
3  Telephone:    (310) 602-6050
   Facsimile:    (310) 602-6350
4  Email:        matt@dereksmithlaw.com

5  Attorney for Plaintiffs,

                    UNITED STATES DISTRICT COURT
6                  CENTRAL DISTRICT OF CALIFORNIA

7

8  JON HANLEY,                          **COMPLAINT**

9            Plaintiff,                 Case No.  20-cv-6058

10       v.                             1.  DISCRIMINATION UNDER THE AGE
                                            DISCRIMINATION IN EMPLOYMENT
11 INTERNATIONAL                            ACT OF 1967;
   ASSOCIATION OF                       2.  RETALIATION UNDER THE AGE
12 MACHINISTS AND                           DISCRIMINATION IN EMPLOYMENT
   AEROSPACE WORKERS;                       ACT OF 1967;
13 INTERNATIONAL                         3.  DISCRIMINATION UNDER TITLE VII;
   ASSOCIATION OF                        4.  RETALIATION UNDER TITLE VII;
14 MACHINISTS AND                        5.  DISCRIMINATION IN VIOLATION OF
   AEROSPACE WORKERS,                        CALIFORNIA FAIR EMPLOYMENT
15 DISTRICT LODGE 141;                        AND HOUSING ACT;
   MICHAEL G. KLEMM,                     6.  RETALIATION IN VIOLATION OF
16 individually; SITO PANTOJA,               CALIFORNIA FAIR EMPLOYMENT
   individually; and FRANKLIN               AND HOUSING ACT;
17 GIANNOLA, individually;              7.  HARASSMENT AND AIDING AND
                                            ABETTING IN VIOLATION OF GOV"T
18          Defendant.                      CODE §§ 12940 ET SEQ.;
19                                      8.  WRONGFUL TERMINATION IN
                                            VIOLATION OF PUBLIC POLICY
20                                      9.  FAILURE TO PREVENT
                                            DISCRIMINATION, HARASSMENT,
21                                          AND RETALIATION IN VIOLATION
                                            OF GOV"T CODE §§ 12940(k);
22

23

24

25                                     **DEMAND FOR JURY TRIAL**

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff, Jon Hanley, by and through his attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS; INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT LODGE 141; MICHAEL G. KLEMM, individually; SITO PANTOJA, individually; and FRANK GIANNOLA, individually; upon information and belief, as follows:

## **NATURE OF THE CASE**

1.      Plaintiff brings this action charging that Defendants violated Plaintiff's rights pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et. seq. ("Title VII"), 42 U.S.C. §1981 ("1981"), The Age Discrimination in Employment Act of 1967 ("ADEA"), and the laws of the State of California, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff suffered as a result of being discriminated against and harassed by his employer on the basis of his sex, gender, age, sexual orientation, gender expression, and gender identity, along with a hostile work environment, retaliation, wrongful termination, and failure to hire.

## **JURISDICTION AND VENUE**

2.      Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII and the ADEA.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3.     Additionally, 28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

4.     This Court has supplemental jurisdiction over the related state law and local ordinance claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claims under California law form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with Plaintiff's federal law claims, and the parties are identical.

5.     On or about April 1, 2020, Plaintiff submitted a Charge with the Equal Employment Opportunity Commission ("EEOC").

6.     On or about April 2, 2020 Plaintiff received a Right to Sue Letter from the California Department of Fair Employment and Housing ("DFEH").  A copy of said right to sue letter regarding Defendant INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS and Defendant INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT LODGE 141 is attached hereto as "Exhibit A" and is incorporated herein as if fully set forth.

7.     On or about May 5, 2020, Plaintiff received a Right to Sue Letter from the EEOC.  A copy of said right to sue letter regarding Defendant INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS and Defendant INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT LODGE 141 is attached hereto as "Exhibit B" and is incorporated herein as if fully set forth.

8.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Central District of California because as described further herein, a substantial part of the events or omissions giving rise to the claims herein occurred in Los Angeles County, State of California and within the Judicial District for the Central District of California. Moreover, Plaintiff resides in this District, and DEFENDANTS operate their business in this District.

9.      Accordingly, this action properly lies in the Central District of California pursuant to 28 U.S.C. 1391.

## THE PARTIES

10.      Plaintiff is seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by Plaintiff's employer on the basis of Plaintiff's age, sex, gender, sexual orientation, gender identity, and gender expression; and the hostile work environment this discrimination created.

11.      At all times material, Plaintiff Jon Hanley (hereinafter referred to as "Plaintiff" or "Hanley"), was fifty-nine (59) years old and is a man residing in the State of California, City of Marina Del Rey.  Plaintiff turned sixty (60) years old on October 5, 2019.

12.      At all times material, DEFENDANT INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS ("IAMAW") was and is a labor organization doing business in the State of California, with their principal place of business located at 9000 Machinists Place, Upper Marlboro, MD 20772, who held supervisory authority over Plaintiff, controlling various tangible aspects of his employment, including the ability to hire and fire Plaintiff.

COMPLAINT

13.     At all times material, DEFENDANT INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS DISTRICT LODGE 141 ("IAMAW141") was and is a labor organization doing business in the State of California, with their principal place of business located at 1771 Commerce Drive, Suite 103, Elk Grove Village, IL 60007-213, who held supervisory authority over Plaintiff, controlling various tangible aspects of his employment, including the ability to hire and fire Plaintiff.

14.     Plaintiff was hired by IAMAW and IAMAW141, to work as an Organizer and directly for United Airlines.

15.     At all times material, IAMAW and IAMAW141 employed and held supervisory authority over Plaintiff jointly and severally, controlling the various tangible activities of Plaintiff's employment, including the ability to hire and fire Plaintiff.

16.     At all times material, MICHAEL G. KLEMM ("KLEMM") was and is a Supervisor for IAMAW and IAMAW141, and held supervisory authority over Plaintiff, controlling various tangible aspects of his employment, including the ability to hire and fire Plaintiff.

17.     At all times material, SITO PANTOJA ("PANTOJA") was and is a Supervisor for IAMAW and IAMAW141, and held supervisory authority over Plaintiff, controlling various tangible aspects of his employment, including the ability to hire and fire Plaintiff.

18.     At all times material, FRANK GIANNOLA ("GIANNOLA") was and is a Supervisor for IAMAW141, and held supervisory authority over Plaintiff,

controlling various tangible aspects of his employment, including the ability to hire and fire Plaintiff.

19.     Plaintiff is informed and believes, and based thereon alleges, that each DEFENDANT sued in this action acts and acted, in all respects pertinent to this action, as the agent of the other DEFENDANTS, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and that the acts of each DEFENDANT are legally attributable to the other DEFENDANTS.

20.     Under California law, DEFENDANTS are jointly and severally liable as employers for the violations alleged herein because they have each exercised sufficient control over Plaintiff.  Each DEFENDANT had the power to hire and fire Plaintiff, supervise and control Plaintiff's work schedule and/or conditions of employment, determine Plaintiff's rate of pay, and maintain Plaintiff's employment records.  DEFENDANTS suffer or permit Plaintiff to work and/or "engage" Plaintiff so as to create a common law employment relationship.  As joint employers of Plaintiff, DEFENDANTS are jointly and severally liable for all relief available to Plaintiff under the law.

## FACTUAL ALLEGATIONS

21.     At all times material, Plaintiff was and is a male resident of the State of California who turned sixty (60) years old on October 5, 2019.

22.     For around 32 years, Plaintiff worked for and continues to work for DEFENDANTS IAMAW.   Around 5 years ago, Plaintiff was promoted to be a District 141 Organizer for DEFENDANTS IAMAW 141, serving this position until around October 13, 2019, when he was fired and demoted to baggage handler.

23.     Plaintiff was an Organizer for District 141 for around 4 years.  Plaintiff was the Lead West Coast Organizer for both JetBlue & Delta Airlines' ramp campaigns.  Plaintiff was responsible for the coordination of all cities to obtain a filing with the NMB for an election for the IAM.  Both campaigns are still present and ongoing.  Plaintiff obtained a nearly 50% participation in IAMAW authorization cards at LAX for Delta ramp employees, virtually working alone.  Plaintiff was in charge of all aspects of organizing, including but not limited to setting up an office, social media, flyers, phone banking, house calls, events, meetings and visibility/rallies at airline terminals.

24.     As an Organizer, Plaintiff travelled across the United States and recruited airline employees to join the union.  Plaintiff travelled to states along the East Coast from Los Angeles and met with airline employees, convincing them to join the union.  Plaintiff is very successful as an organizer since he received the most "cards" or sign ups out of around 50 other organizers during his campaign for Jet Blue.

25.     Michael G. KLEMM ("KLEMM") at all times material was and is the President and Directing General Chairman of DEFENDANT IAMAW141.

26.     Sito PANTOJA ("PANTOJA), at all times material was and is the General Vice President of Transportation of DEFENDANT IAMAW.

27.     From around five years ago when Plaintiff became a District 141 Organizer until around October 13, 2019, DEFENDANT Frank GIANNOLA, at all times material was the Director of Organizing at the IAMAW141 and was Plaintiff's supervisor.

COMPLAINT

28.     Throughout Plaintiff and DEFENDANT GIANNOLA's entire time working together, DEFENDANT GIANNOLA, on a constant basis, disrespectfully and disparagingly called Plaintiff "sweetheart" in private and in front of coworkers.

29.     Throughout Plaintiff and DEFENDANT GIANNOLA's entire time working together, DEFENDANT GIANNOLA repeatedly told Plaintiff words to the effect of, "***I bet you would like that***" and "***there is your type,***" whenever a male walked by them.

30.     Around June of 2019, DEFENDANT GIANNOLA sent texts to Plaintiff which created a hostile work environment such as, "***you popped your cherry.***"

31.     Around June 26, 2019 DEFENDANT GIANNOLA commented on Plaintiff's Facebook photo writing "***Are you wearing leotards by the pool? That is sooo you!!***"

32.     Around June 27, 2019, the Jet Blue organizers had a conference call between Plaintiff, DEFENDANT GIANNOLA, Charlie Hines, Wes Fredrickson, Eric Price, Marilyn Soto, Jerome Richards, Art Jackson, Scott McClung, and Inez Garcia Keim.

33.     During that June 27, 2019 conference call, DEFENDANT GIANNOLA insinuated to the entire audience that Plaintiff was gay.  On the conference call, for around five minutes, DEFENDANT GIANNOLA insinuated Plaintiff was gay by making comments in reference to Plaintiff's June 26, 2019 Facebook photo. DEFENDANT GIANNOLA, speaking about Plaintiff, said something to the effect of and not limited to "***the pants he was wearing were so skimpy***" and asked, "***is there something you want to tell us Jon?***"  These comments were so offensive, that the entire group went silent at which point Plaintiff was forced to ask, "Frank do you

COMPLAINT

have a problem with gay people?," attempting to defend himself and gay people, and to stop DEFENDANT GIANNOLA from continuing his harmful, severe, and offensive comments.

34.     Plaintiff is embarrassed and hurt by these comments as other participants in the call acknowledged how unprofessional and insulting the comments are.

35.     Around July 10, 2019 DEFENDANT GIANNOLA, in front of Klay Farrell, said "*[Plaintiff] must be gay*," and made fun of his white shoes and hair style.  Plaintiff immediately protested and complained to DEFENDANT GIANNOLA about these despicable and discriminating comments, "do you have a problem with me being gay Frank?"

36.     DEFENDANT GIANNOLA created a hostile work environment for Plaintiff.

37.     DEFENDANT GIANNOLA discriminated against Plaintiff because of his gender, sex, gender identity, gender expression, and sexual orientation.

38.     Around July 25, 2019, Plaintiff called Art Jackson and said, "did you hear Frank on the phone?"  Art Jackson responded, "*I know I cannot believe what he just said, that is just Frank*." Both Plaintiff and Art Jackson were in shock as a result of DEFENDANT GIANNOLA's despicable, demeaning, and disparaging comments.

39.     Around July 26, 2019, Plaintiff complained to DEFENDANT President KLEMM about the discrimination in an email.  Plaintiff wrote:

"Good morning brother, well after a lot of thought and trepidation and time, I decided to email you tonight, because I am very disturbed by the Director of Organizing Frank Giannola.  On 06/27/19 we the Jetblue organizers has a conference call with Frank and Frank attacked me because of a picture I posted on Facebook of myself, where he insinuated to everyone on the conference call that I was gay, he even posted a comment on the Facebook page as well.  In fact Franks barbs were so offensive that the whole group went very quiet during his diatribe to the

point of me having to say "Frank do you have a problem with gay people?"…he outed me in front of all the organizers and I am embarrassed and hurt by this…Mike I have struggled with this email for three weeks as I am not a rat and really wanted to let all this go, but I just couldn't because of who I am and what I fight for daily in organizing, and that simple term is 'justice for all'…I just want it to stop Mike and feel in today's world there is a zero tolerance for such behavior especially from someone who is in a leadership role who should know better and especially because we have a lot of gay members within the Airlines that we represent who if heard this stuff would be very offended even if it be by it by jokes or even innuendo…I do feel fragile as well and keep thinking because of this email, there will be there some slight repercussions for so doing so, and will it affect my organizing job I like so much and have been successful doing…I want you to know I came to you first on this Mike out of respect for you as our president and your friendship with Frank."

40.    Around July 29, 2019 Plaintiff sent another email to DEFENDANT President KLEMM clarifying his previous email saying:

"having someone in a leadership position discussing, and making inappropriate jokes or comments about anyone's sexual preference or orientation in the work place is not ok, particularly during a professional conference call, where his supposed "jokes" would not translate.  More importantly, this isn't the first time these, and other negative comments have been made about me by Frank.  But, I've put up with it for a long time now, and chalked it up to Frank just being Frank.  Now it's gone too far…Frank's behavior has now veered toward disrespect and ridicule…recently when mentioned that I was on vacation, Frank chimed in '[Plaintiff] needs to stay on vacation" or to another organizer in reference to me he said "I really don't want that guy here' (meaning in FLL) I don't deserve this Mike and this stuff just ain't cool period. I have worked really hard in organizing, and I don't need Frank disrespecting me all the time. I have shown a personal commitment to my job, and have repeatedly gotten more cards, individually, than anybody in the system."

41.    Around July 29, 2019, DEFENDANT President KLEMM responded solely with "Jon, It's my understanding you do not wish to travel to the east coast for organizing assignments.  Is that accurate?"  DEFENDANT President KLEMM failed to respond or address any of the complaints that Plaintiff made in Plaintiff's July 29, 2019 email.

42.     Around July 29, 2019, Plaintiff responded to DEFENDANT President KLEMM's July 29, 2019 email:

> "Totally inaccurate, although I did have a conversation with Victor about two weeks ago on how difficult it was getting in and out of Los Angeles during peak summer travel time, where I expressed to him if it was ok to do ID90 occasionally.  In four years I have travelled back and forth to the east without issue to JFK/LGA/EWR/BOS/MCO/ATL/FLL/ to name a few"

43.     Around July 31, 2019, Plaintiff complained through an email to Brian Hutchinson, the head of the Employee Assistance Program for the IAMAW141 writing:

> "I now feel bad as if I did something wrong based on [KLEMM's] responses back to me by email as I am the victim here. I also feel/fear there could be possible retaliation against me moving forward for coming forth to [KLEMM] about an individual that is in leadership position whom acted irresponsibly and said very uncomfortable things about me. I am very sad right now because things were going so well and all has turned real bad in organizing lately."

44.     After the email exchanges between Plaintiff and DEFENDANT President KLEMM, around early August, 2019, DEFENDANT President KLEMM directed DEFENDANT GIANNOLA to investigate himself and the actions that Plaintiff complained about.  This investigation was clearly bogus as DEFENDANT GIANNOLA asked the other organizers on the June 27, 2019 conference call to write statements about what they recalled him saying during the conference call. Some organizers reached out to Plaintiff and expressed that they are afraid to be completely honest and that they did not want to do it because they felt that if they were honest, they will be fired.

45.     Around September 29, 2019, DEFENDANT President KLEMM emailed Plaintiff:

COMPLAINT

"I just want to take this opportunity to thank you for all you hard work on our organizing drives. Unfortunately we're making some changes to the campaign and will no longer be needing your services...please prepare yourself to go back into service as a LAX ramp service employee effective October 13, 2019."

46.     In an email around two days later, DEFENDANT President KLEMM further stated that "you are still expected to travel to your assignment this week and next before reporting back to United." This required Plaintiff to continue to work with DEFENDANT GIANNOLA despite his complaints of a hostile work environment and discrimination.

47.     Plaintiff was the only Organizer that was effected by the "changes to the campaign" mentioned in the September 29, 2019 email from DEFENDANT President KLEMM.

48.     DEFENDANTS President KLEMM, IAMAW, and IAMAW141 demoted Plaintiff in retaliation for his complaints of a hostile work environment and discrimination based on his sex, gender, gender identity, gender expression, and sexual orientation.

49.     DEFENDANTS President KLEMM, IAMAW, and IAMAW141 disparately treated Plaintiff by demoting him because of his sex, gender, gender identity, gender expression and sexual orientation.

50.     Around September 29, 2019,  Plaintiff emailed DEFENDANT Sito PANTOJA, the General Vice President of the IAMAW, saying:

"this morning I was let go of my role in organizing for 141 by President Mike Klemm, via an abrupt email, after fulfilling almost five years of service in this role. I am so upset by this, words cannot describe how bad I feel. I did nothing to warrant this cold email sent to me, basically saying, 'we will no longer be needing your services.' Throughout my time in this position, everything I was asked to do I did, and succeeded at each task given to me...I really feel horrible, and honestly have done nothing wrong here...Brother, on October 5th I will be 60 years old,

COMPLAINT

believe it or not.  I am in real shock right now brother because I thought I would be organizing for our team until my retirement.  This was my time to give back to an organization that I have dedicated most of my adult life to.  I just hope this turn of events was no retaliation for the concern I expressed (via my email to President Mike Klemm on 7/26/19) by the way in which the director of organizing of 141 (Frank) had been consistently treating me…I have gotten way more "A" cards signed then anyone in the system for both 141 and 142 combined…I am currently flying across the country each week to Fort Lauderdale from LAX to work the JetBlue campaign, in spite of a medical condition that's called tinnitus…this is a clear example of my commitment and dedication…I have given up potential positions on the grievance committee as well to stay an organizer for 141. Simply Sito this today is just plain wrong as I know others who have been "kept on" simply do not have my abilities or resume…I would like to continue working as an organizer for as long as possible, possibly working for Delta LAX again, or with Kris Hannah on Alaska's Air ramp group Horizon Air at LAX and the west.  I think I could offer my skills, expertise and support in any of these areas, if given the opportunity.  Brother, as always, anything you can do would be much appreciated.  I just had to reach out to you as I know you are good man, and that you care about the people in this union."

PANTOJA never responded to this September 29, 2019 email.

51.     Around September 30, 2019, Plaintiff texted DEFENDANT President KLEMM, asking for DEFENDANT President KLEMM to call Plaintiff.  Around September 31, 2019, DEFENDANT President KLEMM called Plaintiff.  In this conversation, DEFENDANT President KLEMM stated that the only reason for Plaintiff's firing was because "we are making changes."  DEFENDANT President KLEMM then brought up Plaintiff's age of 59 and asked Plaintiff, "***well why don't you retire***."

52.     DEFENDANT President KLEMM discriminated against Plaintiff because of his age.

53.     DEFENDANT President KLEMM created a hostile work environment for Plaintiff because of his age, sex, gender, gender identity, gender expression, and sexual orientation

54.     Plaintiff was forced to continue to work with DEFENDANT GIANNOLA in Fort Lauderdale again around September 30, 2019 and October 2, 2019 despite Plaintiff's complaints of discrimination and hostile work environment.

55.     Around October 2, 2019, DEFENDANT GIANNOLA confronted Plaintiff in order to discuss the emailed complaint to DEFENDANT KLEMM. DEFENDANT GIANNOLA said to Plaintiff "*I wanted to kick your ass*" because of the complaint Plaintiff made.  Plaintiff responded and said something to the effect of "you cannot say that, you obviously do not know the damage you have done, my friends and other people have started to treat me differently, you embarrassed me and everyone thinks I am gay because I had to defend gay people, you have to knock it off."

56.     Around October 2, 2019, while Plaintiff was working with DEFENDANT GIANNOLA, DEFENDANT GIANNOLA told Plaintiff that ""*[he] was being too sensitive*.  Plaintiff pleaded with DEFENDANT GIANNOLA to "stop" and complained of the discrimination but with no avail.

57.     Later that afternoon, while Plaintiff was showing Rodger Strachan, a new organizer, around the airport, DEFENDANT GIANNOLA told the new organizer "*whatever you do, don't go to the bathroom with that guy*" and to "*watch out for that guy*."  Plaintiff pleaded with DEFENDANT GIANNOLA to "stop" and complained of the discrimination but with no avail.

58.     Later that afternoon, Plaintiff gave the new organizer one of his organizing shirts, since the new organizer did not have one. When DEFENDANT GIANNOLA saw this, DEFENDANT GIANNOLA said to the new organizer "*you better wash/steam clean that shirt because you never know where that guy has*

*been*," and that Plaintiff has "*voodoo*" and "*bad gay karma*."  Plaintiff pleaded with DEFENDANT GIANNOLA to "stop" and complained of the discrimination but with no avail.

59.     Later that afternoon, as DEFENDANT GIANNOLA was leaving, DEFENDANT GIANNOLA said something of the effect to Plaintiff, in a *joking* manner, that he will "***make it up to [Plaintiff], me and my girlfriend separated, so I am alone tonight and we should have a candlelight dinner and that you would enjoy that since you are so sensitive***."  Plaintiff pleaded with DEFENDANT GIANNOLA to "stop" and said "really Frank, you just cannot stop."

60.     DEFENDANT GIANNOLA created a hostile work environment for Plaintiff because of Claimant's sex, gender, gender identity, gender expression, and sexual orientation.

61.     DEFENDANT GIANNOLA discriminated against Plaintiff because of his sex, gender, gender identity, gender expression, and sexual orientation.

62.     DEFENDANT GIANNOLA retaliated against Plaintiff because Plaintiff complained of DEFENDANT GIANNOLA's discriminating conduct and the hostile work environment it created for Plaintiff, to DEFENDANT President KLEMM.

63.     Around October 6, 2019, Plaintiff applied for a GL Organizer position for which he was highly qualified and the most experienced of any applicant.  The position would have paid him an increase in wages of between $50,000 and $80,000.00 annually.

64.     DEFENDANTS IAMAW, IAMAW141, KLEMM, and PANTOJA failed to hire Plaintiff because of his age, sex, gender, gender identity, gender expression,

and sexual orientation, and in retaliation to his complaints of discrimination, hostile

work environment, and retaliation.

65.     This GL Organizer position was eventually filled by Ali Rhodes, a less

experienced female who was around 30 years younger than Plaintiff.

66.     DEFENDANTS IAMAW, IAMAW141, KLEMM, and PANTOJA

disparately treated and discriminated against Plaintiff because of his age, sex,

gender, gender identity, gender expression, and sexual orientation.

67.     Around October 8, 2019, Plaintiff emailed DEFENDANT Robert

MARTINEZ Jr., the International President of the IAMAW.  In the email, Plaintiff

complained of the continuing discrimination that he was forced to endure at the

hands of DEFENDANTS President KLEMM and PANTOJA.  Plaintiff wrote:

> "Brother Martinez, I am so hurt by this I can barely write this email, as all
> of these occurrences are wrong on so many different levels.  It's really
> unconscionable to receive an abrupt email saying that I was being
> dismissed, after I did nothing wrong.  I just don't deserve this brother
> after dedicating a lifetime of service to our union and both
> campaigns…so now it appears that unless somebody intercedes on my
> behalf by October 13th, I will probably have to go on disability and
> probably have to retire early, which will severely affect my present
> quality of living, and all just because I made a complaint, and expressed
> concern about how I was being treated by someone in authority…I'm
> hoping that maybe, just maybe you are the one person who can stop this
> potential train wreck, with just one phone call. You can honestly save my
> career and possible life, from not only potential financial ruin (disability),
> but also my emotional well-being, and my career with my union.

68.     In Plaintiff's September 29 email (¶ 50) to PANTOJA, Plaintiff stated

that he was interested and wanted to continue working as an organizer for Horizon

air at LAX, a position that was open.  Despite this, DEFENDANT IAMAW instead

of hiring Plaintiff, hired Mario Osario, an organizer whom Plaintiff trained and was

around 30 years younger than Plaintiff.

69.     DEFENDANTS KLEMM, PANTOJA, IAMAW, and IAMAW141 failed to hire Plaintiff, discriminated against Plaintiff because of his age, gender, sex, gender identity, gender expression, and sexual orientation, and retaliated against Plaintiff in response to his complaints of discrimination.

70.     Around October 10, 2019, Plaintiff emailed PANTOJA again:

> "I never received an email message back from you, which was very disappointing…I have never threatened or asked really for a better monetary position from this union. (although I did send my resume in once) I simply wanted to be an organizer, which I did surprisingly find out I was very good at. John Covney once said…"If I had nine more [Plaintiff's] this Delta campaign would be done." And although somewhat embarrassing that made me feel better than I had felt in very very long time."

71.     Around October 13, 2019, in accordance with the email Plaintiff received from DEFENDANT President KLEMM around September 29, 2019 (¶ 45), Plaintiff was terminated from his position as an Organizer and demoted to ramp service agent or baggage handler for United Airlines in Los Angeles, which constituted an adverse employment action.  As an Organizer, Plaintiff strategically planned, implemented organizing plans, developed and wrote operational protocols and assessment/accountability programs, innovated ideas to obtain "A" cards, communicated and met with airline workers, and travelled around the country bringing in union members.  As a baggage handler, Plaintiff lost all responsibility that he once had as an Organizer and is now carrying and loading luggage at LAX for United Airlines.  Plaintiff was placed as a baggage handler despite his numerous complaints of tinnitus which is increasing due to his work as a baggage handler since October 13, 2019.

72.     DEFENDANTS IAMAW, IAMAW141, KLEMM, GIANNOLA and PANTOJA retaliated against Plaintiff by removing him from his position and

COMPLAINT

demoting him to a baggage handler, an adverse employment action, because of his complaints in regards to gender, sex, age, gender identity, gender expression, and sexual orientation discrimination.

73.     Around February 14, 2020, Plaintiff sent DEFENDANT President KLEMM and DEFENDANT PANTOJA an email which reiterated and detailed Plaintiff's claims of discrimination and retaliation.  Plaintiff attached a letter to this email which Plaintiff wrote and planned on sending to the IAMAW141, Legal Department around December 2, 2019.  The attached letter said:

"My name is Jon Hanley and I am a ramp service agent for United Airlines in Los Angeles, and a member of the IAM union for nearly thirty one years. For approximately five years I have been working for DL/141 as an organizer within the IAM union. My reputation and work ethic have been second-to-none within the organizing field, as I have led the field in obtaining union authorization cards for the IAM and District 141.

Unfortunately, in October 2019, I was dismissed from my position as a DL/141 union west coast organizer, via an email sent to me on 09/29/19 from the President of DL/141, Mike Klemm.

It is my belief, backed up with credible evidence, that I was let go because of a complaint I rendered via email to President Klemm on 07/26/19 about the unacceptable behavior exhibited by Mr. Frank Giannola, the director of organizing for DL141. That complaint was specifically related to statements made to me by Mr. Giannola, initially in front of several witnesses during a conference call on 06/27/19, and again on 07/10/19 in the presence of an organizer Klay Farrell whom I was working with at the airport in Fort Lauderdale Florida. In both instances Mr. Giannola made derogatory, discriminatory, insensitive remarks about, what he assumed to be, my sexual preference, whereby he implied that I am a homosexual, and stated that "I must be gay." I also included screen-shots and texts forwarded to President Klemm to bolster my claims to him in my original email as further proof of harassment by Mr. Giannola.

Unfortunately, the email that I sent to President Mike Klemm, expressing my dissatisfaction and concern about these derogatory remarks fell on deaf ears, as the response that I received from Mr. Klemm on 07/27/19 and 07/29/19 did not adequately address the serious nature of my complaint. In fact, after my email to President Klemm, he directed Mr. Giannola to basically investigate himself. Mr. Giannola then asked the other organizers, who were on the call, (Charlie Hines/Wes

Fredrickson/Eric Price/Marilyn Soto/Jerome Richards/Art Jackson/Scott McClung/Inez Garcia Keim) to write statements about what they recalled him saying to me during the conference call. Some organizers contacted me, after being contacted by Mr. Giannola, and told me that they were afraid to be completely honest, because they felt if they were [honest] they could possibly be fired or let go, because the guy who was doing the investigation on himself was their boss. This is an unacceptable approach to investigate a serious complaint. If this issue was independently investigated by the IAM legal department, the organizers who were on the call, as well as the organizer in FLL Florida, would have felt compelled to be completely honest about what they overheard, pertaining to my complaint.

I sent President Klemm a text message to call me. He finally did on 09/31/19. On the call I asked him, "For what reason am I being let go?" He responded, "We are making changes. Sorry Jon". Yet the only change that was made in organizing was my termination, and not that of any other organizers for DL/141 on that specific campaign. Unfortunately on a side bar note in the aforementioned conversation above with President Klemm, he actually mentioned my age and said to me "well why don't you retire" which is discriminatory on the basis of age and is known as Ageism discrimination.

I have been in touch with DL/141 EAP concerning this issue, both before being terminated, as well as after being terminated. I emailed Brian Hutchinson, the head of the Employee Assistance Program (EAP) on 07/31/19, immediately after my original email of complaint (07/26/19) was sent to President Klemm, as I feared possible retaliation from Mr. Frank Giannola, as a result of my having sent a complaint email to the President Klemm. I also have had various phone discussions with Mr. Hutchinson about how damaged I felt to the point of him suggesting to me to seek outside counseling. We also concurred on 10/22/19 per phone that maybe some of the discriminatory acts by Mr.Giannola that I outlined in previous emails to him were outside the help EAP could give me, because possibly they were more legal matters than emotional help.

To my chagrin, after having sent several emails to the President Klemm, in hopes that he would take corrective action, I was forced to work with Mr. Giannola again in Fort Lauderdale on 09/30/19, even though I adamantly protested, based on my fear that Mr. Giannola would continue making the disparaging, discriminatory statements about me. Irregardless I was sent back on assignment to Fort Lauderdale and had to work with Mr.Giannola and on 10/02/19 he finally showed up and in a personal meeting he rendered a disingenuous apology, and stated that, "I was being too sensitive". Then later that afternoon while working with Mr. Giannola he again made two more discriminatory sexual preference insults, in front of a new organizer from AA/FLL named Rodger Strachan. One was as I was going to show Rodger around the organizing areas at the airport

where Mr. Giannola said out loud to the new organizer Strachan "whatever you do don't go to the bathroom with that guy" meaning me and then again Mr. Gianolla after I gave Mr. Strachan an organizing shirt of mine to look more official, said out loud "you better wash/steam clean that shirt because you never know where that guy has been" and then uttered that I had "bad gay Karma". Unfortunately, in each instance, I had to raise my voice loudly and state to Mr. Giannola, "Frank stop!" I subsequently sent another email on 10/17/19 outlining the conversation and the date this incident happened to the EAP and Brian Hutchinson only because I didn't feel that my complaints were being taken seriously by President Klemm or I would have sent it directly to him. My primary concern when these initial incidents took place, was if I came forward, would there be retaliation? Unfortunately, that's exactly what happened. Very soon after I sent my email to President Klemm, I was terminated from my position as an organizer, after having done this job successfully for almost five years. This is not coincidental.

My responsibility, I believe, is before I file this official complaint with the IAM Grand Lodge legal department then the NMB and possibly with the EEOC, and if neccesary seek private legal counsel in this matter, is to reach out to DL/141 with this official complaint first. I am seeking a possible resolution to these very serious charges, rather than pursue official complaints with government agency's an or possible private litigation. Let me be very clear here. I do not wish to escalate this matter, but if ignored I will be forced to take further action, which is not the goal or intention.

I simply ask that I be reinstated as west coast organizer for DL/141 for the remainder of my organizing career, or until I seek retirement. Many years ago Mr. Klemm at a 141 convention in Arizona offered me a position on his staff as west coast organizer, and I accepted in good faith, my understanding is that it was not a temporary position but permanent position.

I intend to send this letter by both email to president Klemm and then by certified mail to the DL/141 offices and President Klemm.

Discrimination in the workplace regarding sexual preference and age (per suggestion by phone by President Klemm that I retire) is a serious offense. Within employment practices, wrongful termination and discrimination, along with sexual harassment are serious issues that must be handled with utmost care and consideration. I hope this situation can be rectified, before it gets escalated.

Finally, I love this union and what it has done for me throughout my career, from UA ramp as shop steward, to becoming a leader in organizing. I would also say, and I am sure others would say, that I

performed at a high level, and went beyond exceeded expectations in organizing for DL/141 and the IAM.

I am very personally disappointed in the way things have unfolded here, as it has caused damage to me, both personally and professionally. This situation is simply not fair, right or just!

What is most surprising is after defending this union for 31 years, staying in hotels alone across the country, flying space-available on airplanes, being scoffed at outside airports by hundreds of nonunion workers, fighting to organize other airlines, enduring the Atlanta heat in mid-summer in a parking lot for hours, or the New York snow and cold outside airports, for the DL/141 to send me a cold email of termination, after doing nothing wrong, other than to make a legitimate complaint about someone in a leadership position making homophobic remarks and insults, has made me feel quite disillusioned about what "we the union" are really all about and stand for.

I hope this matter is solved very quickly, to the satisfaction of all parties involved."

74.     Plaintiff emailed PANTOJA around March 7, 2020

"Brother Sito, could you please intercede with all this mess? While I have always known that you never do this, this is the one time I ask ask of you to save a life worth saving.  I developed a bad health thing from the constant ramp noise of 32 years called Tinnitus (constant ear ringing) and it has gotten worse since being sent back to the floor.  I don't want to sue the union that I have fought and almost died for because of an inept out of touch and ignorant director of organizing.  I am asking for one last time as your brother to please, make me an organizer till the end of my UA career and nothing more…I am asking for your mercy sir!"

75.     DEFENDANTS President KLEMM and PANTOJA failed to reply to the

February 14, 2020 and March 7, 2020 emails.

76.     DEFENDANT GIANNOLA, Plaintiff's supervisor, created a hostile

work environment for Plaintiff because of Plaintiff's sex, gender, gender identity,

gender expression, and sexual orientation.

77.     DEFENDANT GIANNOLA discriminated against Plaintiff because of

his sex, gender, age, gender identity, gender expression, and sexual orientation.

COMPLAINT

78.     DEFENDANT GIANNOLA retaliated against Plaintiff because Plaintiff complained of DEFENDANT GIANNOLA's discriminating conduct and the hostile work environment it created for Plaintiff, to DEFENDANT President KLEMM.

79.     DEFENDANTS discriminated against Plaintiff and disparately treated Plaintiff because of Plaintiff's sexual orientation, sex, gender, gender identity, gender expression, and age; subjected Plaintiff to a hostile work environment; ultimately terminated, replaced, and demoted Plaintiff because of his sexual orientation, sex, gender, gender identity, gender expression, and age; failed to hire Plaintiff because of his sexual orientation, sex, gender, gender identity, gender expression, and age; and fired and demoted Plaintiff in retaliation to Plaintiff's complaints of said discrimination to DEFENDANTS.

80.     Defendants' actions and conduct were intentional and intended to harm the Plaintiff.

81.     As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

82.     As a result of DEFENDANTS' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from anxiety, depression, severe emotional distress, and suicidal thoughts.

83.     As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured financial hardships and irreparable damage to Plaintiff's professional reputation.

84.     Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary

losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

85.     As DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against DEFENDANTS.

86.     Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

87.     Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting conditions as a result of DEFENDANTS' discriminatory and retaliatory conduct.

88.     Plaintiff further claims actual discharge to the extent Plaintiff is terminated from Plaintiff's position as a result of the unlawful discrimination and retaliation.

89.     Plaintiff claims actual discharge and also seeks reinstatement.

90.     Plaintiff claims alternatively (in the event Defendant Claims so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable laws pertaining to Independent Contractors.  Furthermore, in such, case, Plaintiff claims that DEFENDANT owed and breached its duty to Plaintiff to prevent the harassment/discrimination/retaliation and is liable therefore for negligence.

91.     Plaintiff claims that DEFENDANTS unlawfully discriminated against Plaintiff, retaliated against Plaintiff, and terminated Plaintiff because of Plaintiff's sex, gender, gender identity, gender expression, sexual orientation, age, and because

1   Plaintiff complained of the unlawful conduct of DEFENDANTS related to the above

2   protected classes.

3       92.     The above are just some of the examples of the unlawful discrimination

4   and retaliation to which the DEFENDANTS subjected the Plaintiff on a continuous

5   and on-going basis throughout Plaintiff's employment.

6
    **FIRST CAUSE OF ACTION**
7   **FOR DISCRIMINATION UNDER**
    **THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967**
8   **Not against any individual Defendants**

9       93.     Plaintiff incorporates by reference and re-alleges the preceding

10  paragraphs, inclusive, as though set forth fully herein.

11
        94.     The Age Discrimination in Employment Act of 1967, 29. U.S.C. 623 (a)
12
    provides in pertinent part that: It shall be unlawful for an employer– (1) to fail or
13
14  refuse to hire or to discharge any individual or otherwise discriminate against any

15  individual with respect to his compensation, terms, conditions, or privileges of

16  employment, because of such individual's age.

17
        95.      The exact number of employees at the above entity is unknown, but
18
19  upon information and belief, there are well more than the statutory minimum.

20      96.     During Plaintiff's employment with Defendants, Defendants made

21  comments and remarks regarding Plaintiff's age and Plaintiff's retirement.  Plaintiff

22  was replaced by a younger employee and a younger employee was given a position

23  which Plaintiff applied for.

24
        97.     Defendants violated the above and Plaintiff suffered numerous damages
25
    as a result.
26

27

28

COMPLAINT

## SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967
### Not against any individual Defendants

98.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs, inclusive, as though set forth fully herein.

99.     The Age Discrimination in Employment Act of 1967, 29. U.S.C. 623 (d) provides in pertinent part that: It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

100.    The exact number of employees at the above entity is unknown, but upon information and belief, there are well more than the statutory minimum.  During Plaintiff's employment with Defendants, Defendants made comments and remarks regarding Plaintiff's age and retirement.  Plaintiff complained about this form of discrimination and harassment.  Defendants retaliated against Plaintiff by replacing Plaintiff with a younger employee and by giving a younger employee a position which Plaintiff had stronger qualification and more experience for. Additionally, and in further retaliation, Plaintiff was further discriminated against, demoted and fired.

101.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

1
2

## THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### Not against any individual Defendants

3

102.    Plaintiff incorporates by reference and re-alleges the preceding

4

paragraphs, inclusive, as though set forth fully herein.

5

103.    Title VII states in relevant part as follows:

6
7

"(a) Employer practices: It shall be an unlawful employment practice for

an employer: (1) to fail or refuse to hire or to discharge any individual, or

8
9

otherwise to discriminate against any individual with respect to his

10

compensation, terms, conditions, or privileges of employment, because of

11

such individual's race, color, religion, sex, or national origin;

12

104.    This claim is authorized and instituted pursuant to the provisions of Title

13
14

VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended,

for relief based upon the unlawful employment practices of the above-named

15
16

Defendants.

17

105.    This claim is authorized and instituted pursuant to the provisions of Title

18

VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended,

19

for relief based upon the unlawful employment practices of the above-named

20

Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition

21
22

against discrimination in employment based, in whole or in part, upon an employee's

23

sex, gender, and sexual orientation.

24

106.    Defendants engaged in unlawful employment practices prohibited by 42

25

U.S.C. 2000e et seq., by harassing, allowing, and otherwise discriminating against

26

Plaintiff because of Plaintiff's sex, gender, and sexual orientation, creating a hostile

27

work environment.

28

107.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### FOURTH CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### Not against any individual Defendants

108.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, inclusive, as though set forth fully herein.

109.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

110.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants, including but not limited to continued discrimination, continued harassment, continued hostile work environment, failure to hire, demotion, and wrongful termination.

111.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### FIFTH CAUSE OF ACTION
### FOR DISCRIMINATION IN VIOLATION OF
### CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
### AGAINST ALL DEFENDANTS

112.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, inclusive, as though set forth fully herein.

113.    The California Fair Employment and Housing Act (FEHA) protects the right of all persons to seek, obtain, and hold employment without discrimination based on age, sex, gender, gender identity, gender expression, and sexual orientation. (See California Government Code sections including but not limited to section 12940 (a).

114.    Defendants violated FEHA by disparate treatment of Plaintiff based on his age (59, 60), sex, gender, gender identity, gender expression, and sexual orientation.  Plaintiff is a member of these protected classes.

115.    Plaintiff has suffered the adverse employment actions and a hostile work environment because of discrimination and harassment based on sex, age, gender, gender identity, gender expression, and sexual orientation, retaliation, failure to prevent discrimination, harassment and hostile work environment, failure to hire, wrongful termination, and was harmed thereby.

116.    Plaintiff is informed and believes that his sex, gender, age, sexual orientation, gender expression, and gender identity was a substantial motivating reason or factor in the decision to subject Plaintiff to adverse employment actions of a hostile work environment, discrimination, retaliation, failure to prevent discrimination, harassment, failure to hire, and wrongful termination.

117.    Said conduct violates the FEHA, and such violations were a proximate cause in Plaintiff's damages as stated below.

118.    As a proximate result of Defendants' conduct, Plaintiff has suffered harm, including lost earnings and other employment benefits, humiliation, embarrassment, and mental anguish, all to his damage in an amount in excess of $25,000, the actual amount to be proven at trial.

COMPLAINT

119.    Defendants committed the acts alleged herein maliciously, despicably, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and a conscious disregard of Plaintiffs rights. Plaintiff is thus entitled to recover punitive damages from the Defendants and each of them, in an amount according to proof.

120.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

**SIXTH CAUSE OF ACTION**
**FOR RETALIATION IN VIOLATION OF**
**CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**
**AGAINST ALL DEFENDANTS**

121.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, inclusive, as though set forth fully herein.

122.    Defendants violated Calif. Gov. Code §12940, et seq. by retaliating against Plaintiff because he opposed, complained about and protested Defendants' discriminatory conduct.

123.    Plaintiff engaged in the protected activities of complaining about and protesting Defendant's discriminatory and harassing conduct towards Plaintiff based upon his age, gender, sex, sexual orientation, gender identity, and gender expression, as set forth hereinabove.

124.    Plaintiff is informed and believes and based theron alleges, that the above acts of retaliation committed by Defendants were done with the knowledge, consent and/or ratification of, or at the direction of, each other Defendant.

125.    Plaintiff is informed and believes that his complaints and protestations about Defendants' discriminatory and harassing conduct were motivating reasons and/or factors in the decision to refuse to investigate the discrimination and

harassment, the failure to prevent the discrimination and harassment, and the subjection of Plaintiff to adverse employment actions including failure to hire Plaintiff, demotion, and wrongful termination.

126. Plaintiff's complaints to Defendants about discrimination and harassment protected by FEHA, Government Code section 12900, et seq., were motivating factors in Defendants' decision to demote, not hire, and fire Plaintiff and/or to take other adverse employment action, including further discrimination and harassment.

127. Plaintiff complained to Defendants about the discrimination, harassment and hostile work environment he endured and Defendants took no reasonable steps to prevent Plaintiff from encountering Defendant GIANNOLA, and nothing was done to remedy the discrimination Plaintiff endured. Defendants also fired Plaintiff from his position, failed to hire Plaintiff, and demoted Plaintiff.

128. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, et seq., and Defendants committed unlawful employment practices, including by the following, separate bases for liability:

a. Barring, discharging, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's actual and/or perceived sex, gender and/or other protected characteristics, in violation of Government Code section 12940(a);

b. Retaliating against Plaintiff for his complaints to defendants about the harassment and discrimination he experienced by taking adverse employment actions against him, in violation of Government Code section 12940(f); Harassing Plaintiff and/or creating a hostile work

COMPLAINT

environment, in whole or in part on the basis of Plaintiff's sex, gender, and/or other protected characteristics, in violation of Government Code section 12940(j);

    c.   Retaliation on the basis of actual and/or perceived sex, gender, in violation of Government Code section 12940(k); and

    d.   Retaliating against Plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing Defendant's failure to recognize such rights, including the right to be free of discrimination, in violation of Government Code section 12940(h).

129.   Defendants violated the FEHA by retaliating against Plaintiff because he attempted to exercise his protected rights, as set forth hereinabove.

130.   As a direct, foreseeable, and proximate result of the conduct of Defendants, Plaintiff has suffered, and continues to suffer emotional distress, losses in salary, bonuses, job benefits, and other employment benefits which he would have received from Defendant,

131.   The grossly outrageous, reckless, oppressive, intentional, malicious and bad faith manner in which Defendants engaged in those acts as described in this cause of action entitle Plaintiff to an award of punitive damages against Defendants, in an amount within the jurisdiction of this court, to be ascertained by the fact finder, that is sufficiently high to punish Defendants, deter them from engaging in such conduct again, and to make an example of them to others.

132.   The Plaintiff also requests costs and attorney fees, as allowed by FEHA for the Plaintiffs prosecution of this action in reference to the FEHA code violations described herein.

COMPLAINT

133.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

**SEVENTH CAUSE OF ACTION**
**FOR HARASSMENT AND AIDING AND ABETTING**
**IN VIOLATION OF GOV'T CODE §§12940 ET SEQ.**
**AGAINST ALL DEFENDANTS**

134.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, inclusive, as though set forth fully herein.

135.   At all times hereto, the FEHA was in full force and effect and was binding upon Defendants and each of them.

136.   As such term is used under FEHA, "on the bases enumerated in this part" means or refers to harassment on the bases of one or more of the protected characteristics under FEHA.

137.   These laws set forth in the preceding paragraph  require Defendants to refrain from harassing, or creating, or maintaining a hostile work environment against an employee based upon his sex, gender, sexual orientation, gender identity, age, or gender expression, and for aiding and abetting harassment and retaliation.

138.   Defendants' harassing conduct was severe and pervasive, was unwelcome by Plaintiff, and a reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile and abusive.

139.   Defendants violated the FEHA and the public police of the State of California which is embodied in the FEHA by creating a hostile work environment, and by discriminating and harassing Plaintiff because of his sex, gender, sexual orientation, age, gender identity, and gender expression, as set forth hereinabove.

COMPLAINT

140.    The above said acts were perpetrated upon Plaintiff by a managing agent, supervisor, and/or Defendant knew or should have known of the conduct but failed to take immediate and appropriate corrective action.

141.    The above said acts of Defendants constitute violations of the FEHA and violations of the public policy of the State of California.  Such violations were a proximate cause in Plaintiff's damages as stated below.

142.    The foregoing conduct of Defendants individually, or by and through their managing agents and supervisors, was intended by the Defendants to cause injury to Plaintiff or was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff or subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Defendants.

143.    Pursuant to California Government Code §12965(b), Plaintiff requests a reasonable award of attorney's fees and costs, including expert fees pursuant to the FEHA.

144.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

## EIGHTH CAUSE OF ACTION
## FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
## AGAINST ALL DEFENDANTS

145.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, inclusive, as though set forth fully herein.

146.    The California Fair Employment and Housing Act (FEHA) protects the right of all persons to seek, obtain, and hold employment without discrimination

based on age, gender, sex, sexual orientation, gender identity, and gender expression. (Government Code section 12940 (a) et sq.

147.    The FEHA embodies fundamental, substantial, and well established public policies of the State of California. In suspending and terminating Plaintiff and treating him disparately based on his age, gender, sex, sexual orientation, gender identity, and gender expression, Defendants violated the fundamental, substantial, and well established public policies embodied in FEHA.

148.    As a direct and proximate result of these Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits, and/or out of pocket expenses in an amount according to proof at the time of trial. As a further direct and proximate result of these Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount according to proof at the time of trial.

149.    As a further direct and proximate result of these Defendants' conduct, Plaintiff has suffered mental and emotional pain, distress, and discomfort, all to his detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

150.    In engaging in the conduct alleged herein, these Defendants, and each of them, acted oppressively, maliciously, fraudulently, and/or outrageously towards Plaintiff, with conscious disregard for his known rights and with the intention of causing, and/or willfully disregarding the probability of causing, unjust and cruel hardship to Plaintiff.  Therefore, an assessment of punitive damages should be made against Defendants in an amount sufficient to punish them and to prevent them from willfully engaging in future discriminatory and/or retaliatory conduct.

151.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### NINTH CAUSE OF ACTION
**FOR FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF Govt. Code §12490(k)**
**AGAINST ALL DEFENDANTS**

152.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, inclusive, as though set forth fully herein.

153.    At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

154.    During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in Plaintiff being treated less favorably because of Plaintiff's protected status (i.e., his sex, gender, sexual orientation, gender identity, and gender expression).  During the course of Plaintiff's employment, Defendants failed to prevent themselves and their employees from engaging in unjustified employment practices against employees in such protected classes.  During the course of Plaintiff's employment, Defendants failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the basis of sex and gender, and/or other protected statuses or protected activities.

155.    Defendants knew or should have known about the age, sex, gender, gender identity, gender expression, and sexual orientation discrimination, harassment, and retaliation of Plaintiff set forth above.

COMPLAINT

156.    As a proximate result of the aforementioned violations, Plaintiff has been damaged in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

157.    As a proximate result of defendants' willful, knowing, and intentional misconduct, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

158.    As a proximate result of defendants' willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

159.    Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

160.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

161.    The conduct of Defendants, including their agents and employees, was done with conscious disregard of plaintiff's rights, was carried out by authorized agents acting in a deliberate, calloused, and intentional manner in order to injure and damage Plaintiff, which conduct was despicable, egregious and oppressive, and constituted fraud, malice or oppression as defined by Civil Code section 3294. Therefore, Plaintiff is entitled to punitive damages in an amount sufficient to punish or set an example of defendants, in a sum to be proven at trial.

COMPLAINT

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay, attorney's fees, costs, interest, declaratory judgment, injunctive relief, and all other damages as are just and proper to remedy DEFENDANT'S unlawful employment practices.

Dated: July 7, 2020                                    Respectfully Submitted,

                                                       **DEREK SMITH LAW GROUP, PLLC**
                                                       Attorneys for Plaintiffs

                                                By:    /s/ *Matt E.O. Finkelberg*
                                                       Matt E.O. Finkelberg, Esq.
                                                       633 West 5th Street, Suite 3250
                                                       Los Angeles, CA 90071
                                                       (310) 602-6050

## JURY TRIAL DEMAND

Plaintiffs hereby demands a jury trial on all causes of action and claims with respect to which Plaintiff has a right to jury trial.

Dated: July 7, 2020                                    Respectfully Submitted,

                                                       **DEREK SMITH LAW GROUP, PLLC**
                                                       Attorneys for Plaintiff

                                                By:    /s/ *Matt E.O. Finkelberg*
                                                       Matt E.O. Finkelberg, Esq.
                                                       633 West 5th Street, Suite 3250
                                                       Los Angeles, CA 90071
                                                       (310) 602-6050

COMPLAINT